## JUDLIN v. GARDEN ATHLETIC CLUB.
### No. 16136.

Court of Appeal of Louisiana. Orleans.
June 24, 1935.

Edw. Dinkelspiel, Wisdom & Stone, and John Minor Wisdom, all of New Orleans, for appellant.

A. G. Williams, of New Orleans, for appellee.

JANVIER, Judge.

Peter L. Judlin, owner of a certain building known as the Coliseum Arena, having leased it to Garden Athletic Club, a nontrading corporation, seeks to evict the said tenant for alleged nonpayment of a portion of the stipulated rent, for which rent notes were executed. The defense is payment. In fact, defendant contends that at the time the eviction proceeding was filed there had been an overpayment of rent to the extent of $208.34.

In the court a qua there was judgment for defendant, and plaintiff has appealed.

In support of its contention that, at the time of the filing of this proceeding, there had been an overpayment of rent, defendant submits a statement prepared by an auditor purporting to show all payments made from February 11, 1934, to February 12, 1935. It is conceded that, if all the payments shown on this statement were actually made, then not only was there no default, but, manifestly, there had been an overpayment to the extent contended for. All but two of the payments shown on the statement were made by check, and the production of the checks has established those payments. But defendant declares that two payments shown on the statement were made in cash, and that credit was not given therefor. One of these payments, amounting to $258.34, is alleged to have been made on February 11, 1934, and the other, amounting to $458.34, is claimed to have been made during the month of November, 1934. If either of the said payments be eliminated, then it will at once appear that there was a default, because, for instance, if even the smaller payment claimed, amounting to $258.34, be deducted from the statement, then, according to defendant's own figures, there was a default to the extent of $50. Most of the verbal testimony in the record concerns the alleged payment of $458.34, which defendant claims was made in November, 1934, and defendant offers no verbal evidence whatever concerning the alleged payment of $258.34 said to have been made on February 11, 1934, but, in order to show that payment was made, relies on the fact that the note due on February 11 bears a superscription in the handwriting of plaintiff's counsel showing that it was paid on that day. But plaintiff's contention is that the payment was not made on February 11, but was made on February 20, some nine days later, and that, since that payment was made on the final note of the lease, the said attorney dated the receipt February 11 merely to have it appear that the final note of the preceding lease had been paid before the commencement of the new lease.

The attorney for plaintiff, contends that the receipt on the note dated February 11 was carelessly executed by him because it was customary for the defendant to pay notes by check and to leave the notes with him, and in argument he contended that when such was done, it was probable that later the notes would be returned and that, when he would return them, he would mark them as having been paid, without investigating to see the exact day on which payment of any one had been made.

It was, no doubt, thoughtless and careless on the part of counsel for plaintiff to so date that receipt, and he was further careless in writing a letter dated February 27, 1934, in which he referred to that note as having been paid on February 11.

But, in spite of these facts, the evidence convinces us that that note was not paid on February 11, and that the payment of February 20 was made to cover that note, and was not made in advance to cover the first of the new series which had not yet matured. The circumstances render any other conclusion inescapable.

If defendant is correct in its contention that a cash payment was made on February 11, then it is hard to understand why no protest was made, when, on February 14, just three days later, a letter was received from counsel for plaintiff complaining about the fact that the said note had not been paid.

It further appears that because of the fact that there was a subtenant, who had been paying a portion of the rent directly to the plaintiff, defendant's payments had been limited to the remaining portion. The subtenant apparently had paid rent with reasonable promptness, but the main tenant, defendant, had, on frequent occasions, been in arrears; therefore, when it made its payments, it was only required to pay the balance remaining due after the deduction of that portion which had been paid by the subtenant. Now, if it paid the rent in advance for the first note of the new lease, it certainly would have paid the whole amount of the note and not only the portion which would have been due had the subtenant also made its payment in advance. It is most difficult to believe that a payment in advance would have included only that portion which might have been due had the subtenant's portion been paid.

We also cannot overlook the fact that the lease did not stipulate for payment in advance. There was no reason, therefore, why defendant should have paid this month's rent not only in advance, but even before it had received its copy of the lease. We say this because the record shows that the lease was not mailed to the defendant until February 27, whereas de-

fendant contends that on February 20 it had paid rent in advance.

If there was a payment on February 11, then, when the payment of February 20 was made, concededly there would have been two payments made, and yet, on February 27, when counsel for plaintiff returned the note, he returned only one. Surely defendant, if it had made two payments, would have demanded the return of two notes.

In oral argument counsel for plaintiff referred to the fact that practically all of the rent payments made by defendant for several years had been made by check and he contended that it was, therefore, most unusual that the two payments in controversy should have been made in cash. Thereupon, counsel for defendant stated that it was not the contention of defendant that the payment of February 11 had been made in cash. If it was not made in cash, then it must have been made by check, and no check is produced to show that payment, though each other check is produced.

Referring, momentarily, to the contention of defendant that throughout the terms of the preceding leases it had always been paying rent in advance, we notice the fact that in the record there are several letters written during the term of the lease immediately preceding the one now in question and in which letters demands were made for overdue rent. In view of all of the circumstances which so completely corroborate the contention of plaintiff that there was no payment made on February 11, we reach the conclusion that there was error in the judgment rendered below. Having reached this conclusion as the result of the elimination of the alleged payment of February 11, 1934, it is unnecessary for us to consider the evidence with reference to the payment allegedly made in November, 1934. This is not a suit for past-due rent, but is merely a proceeding for eviction. Therefore, the amount of past-due rent is of no importance.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of Peter L. Judlin, and against the defendant, Garden Athletic Club, ordering and condemning the said defendant, within 24 hours of the finality of this decree, to vacate the premises known as "Coliseum Arena" and to deliver the same into the possession of plaintiff, Peter L. Judlin.

And it is further ordered that the matter be remanded to the civil district court for the parish of Orleans for such further proceedings, in accordance with section 6597 of Dart's Louisiana General Statutes, as may be necessary; defendant to pay all costs.

Reversed, remanded.